# Exhibit 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **DONALD R. BURLEW, individually and on behalf of similarly situated persons,** | : : : | **Civil Action No. 4:15-cv-03289-KPE** |
| **Plaintiff,** | : : | |
| **v.** | : : | **COLLECTIVE ACTION** |
| **SAVANNA ENERGY SERVICES (U.S.A.) CORP.** | : : : | |
| **Defendant.** | : : | |

**DECLARATION OF SARAH R. SCHALMAN-BERGEN IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION TO APPROVE THE SETTLEMENT AGREEMENT AND FOR ATTORNEYS' FEES AND COSTS**

I, Sarah R. Schalman-Bergen, hereby declare that the following is true and correct:

1.      I am a member in good standing of the bar of the Commonwealth of Pennsylvania, and I am admitted in this Court.  I respectfully submit this declaration in support of Plaintiff's Unopposed Motion to Approve the Settlement Agreement and for Attorneys' Fees and Costs.  The following is based on my personal knowledge, and if called upon to do so, I could and would competently testify thereto.

2.      I am a Shareholder of Berger & Montague, P.C. ("Berger & Montague") and Lead Counsel for Plaintiff and the Settlement Collective in the above-captioned litigation.  Berger & Montague specializes in class action litigation in federal and state courts and is one of the preeminent class action law firms in the United States.  I have attached a copy of our firm's resume hereto as Exhibit 1.  Berger & Montague currently consists of approximately 67 attorneys who represent plaintiffs in complex civil litigation and class action litigation.  Our Firm's Employment Law Department has extensive experience representing employees in class action and collective

action litigation.  Berger & Montague has played lead roles in major class action cases for over 47 years, resulting in recoveries totaling billions of dollars for our clients and the classes they represent.

3.     I am the Co-Chair the Employment Law Department at Berger & Montague, and I have an extensive background in litigation on behalf of employees.  I currently serve as lead or co-lead counsel in many employment class and collective action cases in federal courts across the country, including unpaid wage cases similar to this case involving day rate workers in the oil and gas industry.  This level of experience enabled my Firm to undertake this matter and to efficiently and successfully prosecute these claims on behalf of the Settlement Class.

4.     Practice in the area of wage and hour class and collective action litigation requires skill, knowledge and experience in two distinct subsets of the law.  Expertise in one does not necessarily translate into expertise in the other.  Plaintiff's Counsel in wage and hour actions must have expertise in both.  The issues presented in this case required more than just a general appreciation of wage and hour law and class action/collective action procedure, as these areas of practice are rapidly developing.

5.     On November 6, 2016, Plaintiff Donald R. Burlew ("Burlew") commenced this action by filing a Complaint against Defendant Savanna Energy Services (U.S.A.) Corp. ("Savanna")[1] in this Court (Dkt. No. 1).  On July 7, 2016, the Parties stipulated to conditional certification and sending Court-approved Notice to a collective of "all current or former employees of Savanna Energy Services (U.S.A.) Corp. who performed work as a Rig Manager in Savanna's drilling division in the United States within the past three years." (Dkt. No. 24).  On July 22, 2016, notice of this Lawsuit was sent and a total of 41 individuals, including Burlew, filed Opt-In

---

[1] Burlew collectively with Savanna, the "Parties."

Consent Forms to join the Lawsuit.

6.      The Parties agreed to an Alternative Dispute Resolution ("ADR") process, during which they exchanged substantial informal discovery, and engaged in extensive arm's-length settlement negotiations.  In preparing for mediation, Berger & Montague, P.C. reviewed Savanna's payroll and personnel documents and, based on the data provided, generated a damages analysis consisting of various models representing different assumptions. Berger & Montague, P.C. then worked with Savanna's counsel to answer any questions either party may have on the data and damages analysis provided.

7.      On February 22, 2017, the Parties participated in a full-day, in-person mediation session in Houston, Texas before experienced mediator Anne Marie Estevez. The Parties were able to reach a settlement at the mediation.  As a result of the mediation session and the extensive continued arm's-length negotiations between the Parties, the Parties have agreed to settle the Lawsuit in accordance with the terms of the Settlement Agreement.

8.      I believe that the settlement is not only fair and reasonable and in the best interests of the Settlement Collective, it is excellent.  The negotiated Settlement Agreement provides an excellent settlement for the 41 Settlement Class Members with respect to their claims for allegedly unpaid overtime wages arising from Savanna's alleged improper wage and hour practices at issue in this case, especially when taking into consideration the possibility that the Lawsuit, if not settled now, might not result in any recovery or might result in a recovery less favorable.

9.      The Settlement Agreement offers significant advantages over the continued prosecution of this Lawsuit: Burlew and the other Settlement Class Members will receive significant financial compensation and will avoid the risks inherent in the continued prosecution of this case, in which Savanna asserts various defenses to its liability.

10.     The Parties have spent considerable time negotiating and drafting the Settlement Agreement, which ensures that all Settlement Class Members are provided with notice of the Settlement Agreement and its terms.

11.     The Total Settlement Amount provides Settlement Class Members with the recovery of unpaid overtime hours worked, and it was carefully negotiated based on factual discovery, a substantial investigation by Berger & Montague, P.C., and the review and analysis of documents produced by Savanna.

12.     The Total Settlement Amount is based on an analysis of workweeks that the Settlement Class Members worked for Savanna during the relevant time period, as determined from Savanna's personnel and payroll records.  The Total Settlement Amount represents close to 100% of *liquidated* damages that would be owed to the Settlement Class Members, assuming a half time damages calculation.

13.     If the Settlement Agreement is approved, all Settlement Class Members will receive a Settlement Award from the Net Settlement Amount, and Settlement Class Members will only release claims against Savanna if they deposit or cash their Settlement Award check.  At the conclusion of the 180-day check void period, Savanna shall send a check for the total amount of any uncashed Settlement Awards to Berger & Montague, P.C., payable to Lone Star Legal Aid, the Parties' agreed upon *cy pres* recipient.

14.     Subject to Court approval, checks to the Settlement Class Members shall be prepared by Savanna within thirty (30) days from the dismissal of the Lawsuit or receipt of Berger & Montague, P.C.'s calculations of the Settlement Awards, whichever is later. Berger & Montague, P.C. will send all Settlement Class Members via First Class Mail or Federal Express 1) a Notice of Collective Action Settlement and Settlement Award Check in the form attached to the

Settlement Agreement as Exhibit A, and 2) a settlement check with the amount of their Settlement Award.  Each Settlement Class Member shall receive a Settlement Award calculated using the formula set forth in the Settlement Agreement.  There are 41 Settlement Collective Members, including Burlew.

15.     In this action, Burlew took very real steps to advance the interests of the Settlement Collective in this litigation. Burlew took the significant risk of coming forward to represent the interests of his fellow employees. He worked with Plaintiff's Counsel, providing background information about his employment, about Savanna's policies and practices, and about the allegations in this lawsuit. Burlew risked his reputation in the community and in his field of employment in order to participate in this case on behalf of the Collective.

16.     In addition, Burlew's service award is justified because he agreed to a broader release of his claims against Defendant.

17.     Berger & Montague, P.C. agreed to represent Burlew on a contingency fee basis. In this case, Berger & Montague, P.C. would not have recovered any of their fees and out-of-pocket costs had they not obtained a settlement or prevailed at trial.

18.     The risks Berger & Montague, P.C. undertook were real, and the resources that Berger & Montague, P.C. dedicated to this Lawsuit meant that such resources were not available to other cases.  Berger & Montague, P.C.'s contingency risk, together with the excellent result that has been achieved on behalf of the Settlement Class Members, supports the requested fees and costs.

**SUMMARY OF WORK PERFORMED BY BERGER & MONTAGUE**

19.     I am the lead Shareholder at Berger & Montague with respect to this case.  I directed the work of the other attorneys at my firm, conducted a legal analysis of the facts presented by this case and presented legal arguments to opposing counsel.  In this capacity, I: 1) conducted the initial

case investigation; 2) oversaw, managed, assigned and coordinated duties of a team of attorneys throughout this litigation; 3) devised and implemented strategy and participated in numerous meetings and telephone conferences with Savanna's counsel related to the litigation and settlement; 4) coordinated the review of Savanna's documents; 5) researched relevant issues for litigation; 6) conducted damages analysis in preparation for mediation; 7) reply correspondence in advance of mediation; 9) assisted in directing the settlement conference that resulted in the settlement, and negotiated the details and terms of the Settlement Agreement; 10) edited the Settlement Agreement; and 11) edited Plaintiff's Unopposed Motion for Approval of the Settlement Agreement and Attorneys' Fees and Costs.

20.     The other co-chair of the Employment Rights Department and Executive Committee Member, Shanon J. Carson assisted in overseeing and managing, the duties of a team of attorneys throughout this litigation, and devised and implemented strategy related to the litigation and settlement.

21.     An associate of our firm, Alexandra K. Piazza, was the primary associate on this case, researched relevant issues for litigation; reviewed documents produced by Savanna; maintained client contact throughout the litigation; oversaw the administration of the notices during the conditional certification stage; reply correspondence in advance of mediation; and reviewed damages analysis.

22.     An associate of our firm, Camille Fundora researched relevant issues for litigation; reviewed documents produced by Savanna; reply correspondence in advance of mediation; drafted the Settlement Agreement; prepared for and attended mediation; and drafted and edited Plaintiff's Unopposed Motion to Approve the Settlement Agreement and for Attorneys' Fees and Costs.

23.     All of the work described above was reasonable and necessary to the prosecution

and settlement of this case.  Berger & Montague, P.C. conducted an extensive factual investigation and engaged in significant motion practice during the prosecution of this action.  Through this comprehensive evaluation of the facts and law, Berger & Montague, P.C. was able to settle this case for a substantial sum.  Berger & Montague, P.C. achieved this result in a very timely fashion, providing members of the Settlement Collective with substantial and certain relief much sooner than if this matter had been extensively litigated.

24.     The settlement reached with Savanna through the ADR process, which involves complex provisions that are specific to class action litigation of wage and hour law, is a reflection of Berger & Montague, P.C.'s experience.  The Settlement Agreement provides members of the Settlement Collective with substantial benefits without having to wait for years of drawn out litigation.  Based upon the foregoing reasons, Berger & Montague, P.C. respectfully requests that this motion be granted.

25.     Due to the amount of privileged information contained in Berger & Montague's actual hourly billing records, those detailed records are not attached here, but can easily be provided for this Court's *in camera* review should the Court wish to review them.

26.     The hourly rates for the partners, attorneys, and professional staff are the same as would be charged in non-contingent matters and/or which have been accepted and approved in other recent class and collective action wage and hour litigation by this Court.  *See Scolaro v. Rightsourcing, Inc.*, No. 16-cv-1083 (C.D. Cal. June 26, 2017) (approving fee rates for Berger & Montague, P.C.); *Hively v. Archer Well Co., Inc.*, No. 13-cv-106 (W.D. Pa. Aug. 12, 2014) (same).

27.     Berger & Montague, P.C. assumed a very real risk in taking on this contingent fee case, and was prepared to invest time, effort, and money over a period of years with absolutely no guarantee of any recovery.

28.     As part of the negotiations that led to the Settlement, Savanna agreed not to object to an award of thirty-five (35%) percent of the Gross Settlement Amount for attorneys' fees and costs.

## BERGER & MONTAGUE'S EXPENSES

29.     This litigation required my firm to advance costs.  Because the risk of advancing costs in this type of litigation is significant, doing so is often cost prohibitive to many attorneys.

30.     The expenses incurred pertaining to this case are reflected in the books and records of this firm.  These books and records are prepared from expense vouchers and check records and are an accurate record of the expenses incurred.  All of the expenses incurred were reasonable and necessary to the prosecution of this case, including such costs as mediation fees, court costs, copying fees, delivery costs (including costs for printing and sending claim forms to Settlement Class Members), and computerized legal research.

31.     Berger & Montague, P.C. maintains detailed billing records. As the Court granted Defendant's Unopposed Motion for Leave to File Settlement Agreement Under Seal (Dkt. No. 44), Berger & Montague, P.C. do not include here an itemization of the costs expended in this lawsuit.  However, Berger & Montague, P.C. can easily provide an itemization of costs for this Court's *in camera* review should the Court wish to review them.

Dated: July 26, 2017                                   /s Sarah R. Schalman-Bergen
                                                       Sarah R. Schalman-Bergen

# EXHIBIT A



1622 Locust Street | Philadelphia, PA 19103
info@bm.net
bergermontague.com
800-424-6690

## About Berger & Montague

Berger & Montague is a full-spectrum class action and complex civil litigation firm, with nationally known attorneys highly sought after for their legal skills. The firm has been recognized by courts throughout the country for its ability and experience in handling major complex litigation, particularly in the fields of antitrust, securities, mass torts, civil and human rights, whistleblower cases, employment, and consumer litigation.  In numerous precedent-setting cases, the firm has played a principal or lead role.

The *National Law Journal,* which recognizes a select group of law firms each year that have done "exemplary, cutting-edge work on the plaintiffs side," has selected Berger & Montague in 13 out of the last 14 years (2003-05, 2007-16) for its "Hot List" of top plaintiffs' oriented litigation firms in the United States. The firm has also achieved the highest possible rating by its peers and opponents as reported in *Martindale-Hubbell*, and was ranked as a 2017 "Best Law Firm" by *U.S. News - Best Lawyers*.

Currently, the firm consists of 59 lawyers; 18 paralegals; and an experienced support staff.  Few firms in the United States have our breadth of practice and match our successful track record in such a broad array of complex litigation.

## History of the Firm

Berger & Montague was founded in 1970 by the late David Berger to concentrate on the representation of plaintiffs in a series of antitrust class actions.  David Berger helped pioneer the use of class actions in antitrust litigation and was instrumental in extending the use of the class action procedure to other litigation areas, including securities, employment discrimination, civil and human rights, and mass torts. The firm's complement of nationally recognized lawyers has represented both plaintiffs and defendants in these and other areas, and has recovered billions of dollars for its clients.  In complex litigation, particularly in areas of class action litigation, Berger & Montague has established new law and forged the path for recovery.

The firm has been involved in a series of notable cases, some of them among the most important in the last 40 years of civil litigation.  For example, the firm was one of the principal counsel for plaintiffs in the *Drexel Burnham Lambert/Michael Milken* securities and bankruptcy litigation. Claimants in these cases recovered approximately $2 billion in the aftermath of the collapse of the junk bond market and the bankruptcy of *Drexel* in the late 1980's.  The firm was also among the principal trial counsel in the *Exxon Valdez Oil Spill* litigation in Anchorage, Alaska, a trial resulting in a record jury award of $5 billion against Exxon, later reduced by the U.S. Supreme Court to $507.5 million.  Berger & Montague was lead counsel in the *School Asbestos Litigation*, in which a national class of secondary and elementary schools recovered in excess of $300 million to defray the costs of asbestos abatement.  The case was the first mass tort property damage class action certified on a national basis.  Berger & Montague was also lead/liaison counsel in the *Three Mile Island Litigation* arising out of a serious nuclear incident.

Additionally, in the human rights area, the firm, through its membership on the executive committee in the *Holocaust Victim Assets Litigation*, helped to achieve a $1.25 billion settlement with the largest Swiss banks on behalf of victims of Nazi aggression whose deposits were not returned after the Second World War.  The firm also played an instrumental role in bringing about a $4.37 billion settlement with German industry and government for the use of slave and forced labor during the Holocaust.

## Practice Areas and Case Profiles

### Antitrust

In antitrust litigation, the firm has served as lead, co-lead or co-trial counsel on many of the most significant civil antitrust cases over the last 45 years, including *In re Corrugated Container Antitrust Litigation* (recovery in excess of $366 million), the *Infant Formula* case (recovery of $125 million), the *Brand Name Prescription Drug* price fixing case (settlement of more than $700 million), the *State of Connecticut Tobacco Litigation* (settlement of $3.6 billion), the *Graphite Electrodes Antitrust Litigation* (settlement of more than $134 million), and the *High-Fructose Corn Syrup Litigation* ($531 million).

> The *Legal 500*, a guide to worldwide legal services providers, ranked Berger & Montague as a Top-Tier Firm for Antitrust: Civil Litigation and Class Actions in the United States in its 2015 guide and has repeatedly cited Berger & Montague's antitrust practice as "stand[ing] out by virtue of its first-class trial skills."
>
> For five straight years, Berger & Montague has been selected by *Chambers and Partners' USA's* America's Leading Lawyers for Business as one of Pennsylvania's top antitrust firms.

- ▪ **In re Currency Conversion Fee Antitrust Litigation:**  Berger & Montague, as one of two co-lead counsel, spearheaded a class action lawsuit alleging that the major credit cards had conspired to fix prices for foreign

currency conversion fees imposed on credit card transactions.  After eight years of litigation, a settlement of $336 million was approved in October, 2009, with a Final Judgment entered in November, 2009.  Following the resolution of eleven appeals, the District Court, on October 5, 2011, directed distribution of the settlement funds to more than 10 million timely filed claimants, among the largest class of claimants in an antitrust consumer class action. A subsequent settlement with American Express increased the settlement amount to $386 million.  (MDL No. 1409 (S.D.N.Y)).

▪   ***In re Marchbanks Truck Service Inc., et al. v. Comdata Network, Inc.:***  Berger & Montague was co-lead counsel in this antitrust class action brought on behalf of a class of thousands of Independent Truck Stops. The lawsuit alleged that defendant Comdata Network, Inc. had monopolized the market for specialized Fleet Cards used by long haul truckers. Comdata imposed anticompetitive provisions in its agreements with Independent Truck Stops that artificially inflated the fees Independents paid when accepting the Comdata's Fleet Card for payment.  These contractual provisions, commonly referred to as anti-steering provisions or merchant restraints, barred Independents from taking various competitive steps that could have been used to steer fleets to rival payment cards.  The settlement for $130 million and valuable prospective relief was preliminary approved on March 17, 2014, and finally approved on July 14, 2014. In its July 14, 2014 order approving Class Counsel's fee request, entered contemporaneously with its order finally approving the settlement, the Court described this outcome as "substantial, both in absolute terms, and when assessed in light of the risks of establishing liability and damages in this case."

▪   ***Ross, et al. v. Bank of America (USA) N.A., et al.:***  Berger & Montague, as lead counsel for the cardholder classes, obtained final approval of settlements reached with Chase, Bank of America, Capital One and HSBC, on claims that the defendant banks unlawfully acted in concert to require cardholders to arbitrate disputes, including debt collections, and to preclude cardholders from participating in any class actions.  The case was brought for injunctive relief only.  The settlements remove arbitration clauses nationwide for 3.5 years from the so-called "cardholder agreements" for over 100 million credit card holders.  This victory for consumers and small businesses came after nearly five years of hard-fought litigation, including obtaining a decision by the Court of Appeals reversing the order dismissing the case, and will aid consumers and small businesses in their ability to resist unfair and abusive credit card practices.  A proposed settlement has been reached with the non-bank defendant arbitration provider (NAF), and, after defeating summary judgment, Berger & Montague is preparing the case for trial against the remaining two bank defendants.

▪   ***In re High Fructose Corn Syrup Antitrust Litigation:***  Berger & Montague was one of three co-lead counsel in this nationwide class action alleging a conspiracy to allocate volumes and customers and to price-fix among five producers of high fructose corn syrup.  After nine years of litigation, including four appeals, the case was settled on the eve of trial for $531 million.  (MDL. No. 1087, Master File No. 95-1477 (C.D. Ill.)).

▪   ***In re Linerboard Antitrust Litigation:***  Berger & Montague was one of a small group of court-appointed executive committee members who led this nationwide class action against producers of linerboard.  The complaint alleged that the defendants conspired to reduce production of linerboard in order to increase the price of linerboard and corrugated boxes made therefrom.  At the close of discovery, the case was settled for more than $200 million. (98 Civ. 5055 and 99-1341 (E.D. Pa.)).

▪   ***Johnson, et al. v AzHHA, et al.:***  Berger & Montague is co-lead counsel in this litigation on behalf of a class of temporary nursing personnel, against the Arizona Hospital and Healthcare Association, and its member hospitals, for agreeing and conspiring to fix the rates and wages for temporary nursing personnel, causing class members to be underpaid.  The court approved a nearly $22.5 million settlement on behalf of this class of nurses. (Case No. 07-1292 (D. Ariz.)).

3

- ▪ ***In re Graphite Electrodes Antitrust Litigation:*** Berger & Montague was one of the four co-lead counsel in a nationwide class action price-fixing case. The case settled for in excess of $134 million and over 100% of claimed damages. (02 Civ. 99-482 (E.D. Pa.)).

- ▪ ***North Shore Hematology-Oncology Assoc., Inc. v. Bristol-Myers Squibb Co.:*** The firm was one of several prosecuting an action complaining of Bristol Myers's use of invalid patents to block competitors from marketing more affordable generic versions of its life-saving cancer drug, Platinol (cisplatin). The case settled for $50 million. (No. 1:04CV248 (EGS) (D.D.C.)).

- ▪ ***In re Catfish Antitrust Litig. Action***: The firm was co-trial counsel in this action which settled with the last defendant a week before trial, for total settlements approximating $27 million. (No. 2:92CV073-D-O, MDL No. 928 (N.D. Miss.)).

- ▪ ***In re Carbon Dioxide Antitrust Litigation:*** The firm was co-trial counsel in this antitrust class action which settled with the last defendant days prior to trial, for total settlements approximating $53 million, plus injunctive relief. (MDL No. 940 (M.D. Fla.)).

- ▪ ***In re Infant Formula Antitrust Litigation***: The firm served as co-lead counsel in an antitrust class action where settlement was achieved two days prior to trial, bringing the total settlement proceeds to $125 million. (MDL No. 878 (N.D. Fla.)).

- ▪ ***Red Eagle Resources Corp., Inc., v. Baker Hughes, Inc.:*** The firm was a member of the plaintiffs' executive committee in this antitrust class action which yielded a settlement of $52.5 million. (C.A. No. H-91-627 (S.D. Tex.)).

- ▪ ***In re Corrugated Container Antitrust Litigation:*** The firm, led by H. Laddie Montague, was co-trial counsel in an antitrust class action which yielded a settlement of $366 million, plus interest, following trial. (MDL No. 310 (S.D. Tex.)).

- ▪ ***Bogosian v. Gulf Oil Corp.:*** With Berger & Montague as sole lead counsel, this landmark action on behalf of a national class of more than 100,000 gasoline dealers against 13 major oil companies led to settlements of over $35 million plus equitable relief on the eve of trial. (No. 71-1137 (E.D. Pa.)).

- ▪ ***In re Master Key Antitrust Litigation:*** The firm served as co-lead counsel in an antitrust class action that yielded a settlement of $21 million during trial. (MDL No. 45 (D. Conn.)).

The firm has also played a leading role in cases in the pharmaceutical arena, especially in cases involving the delayed entry of generic competition, having achieved over $1 billion in settlements in such cases over the past decade, including:

- ▪ ***In re Prandin Direct Purchaser Antitrust Litigation:*** Berger & Montague served as co-lead counsel and recovered $19 million on behalf of direct purchasers of the diabetes medication Prandin. (Case No. 2:10-cv-12141 (E.D. Mich.)).

- ▪ ***Mylan Pharmaceuticals, Inc. v. Warner Chilcott Public Ltd. Co.:*** Berger & Montague was appointed as co-lead counsel in a case challenging Warner Chilcott's alleged anticompetitive practices with respect to the branded drug Doryx. The case was settled for $15 million. (Case No. 2:12-cv-03824 (E.D. Pa.)).

4

- *In re Neurontin Antitrust Litigation:*  Berger & Montague served as part of a small group of firms challenging the maintenance of a monopoly relating to the pain medication Neurontin.  The case settled for $190 million.  (Case No. 02-1830 (D.N.J.)).

- *In re Skelaxin Antitrust Litigation:*  Berger & Montague was among a small group of firms litigating on behalf of direct purchasers of the drug Skelaxin.  The case settled for $73 million.  (Case No. 2:12-cv-83 / 1:12-md-02343) (E.D. Tenn.)).

- *In re Wellbutrin XL Antitrust Litigation:*  Berger & Montague is serving as co-lead counsel for a class of direct purchasers of the antidepressant Wellbutrin XL.  A settlement of $37.5 million was reached with Valeant Pharmaceuticals (formerly Biovail), one of two defendants in the case.  Litigation is proceeding against the remaining defendant, GlaxoSmithKline.  (Case No. 08-cv-2431 (E.D. Pa.)).

- *Rochester Drug Co-Operative, Inc. v. Braintree Labs., Inc.:*  Berger & Montague, appointed as co-lead counsel, prosecuted this case on behalf of direct purchasers alleging sham litigation led to the delay of generic forms of the brand drug Miralax.  The case settled for $17.25 million. (Case No. 07-142 (D. Del.)).

- *In re Oxycontin Antitrust Litigation:*  Berger & Montague served as co-lead counsel on behalf of direct purchasers of the prescription drug Oxycontin.  The case settled in 2011 for $16 million.  (Case No. 1:04-md-01603 (S.D.N.Y)).

- *Meijer, Inc., et al. v. Abbott Laboratories:*  Berger & Montague served as co-lead counsel in a class action on behalf of pharmaceutical wholesalers and pharmacies charging Abbott Laboratories with illegally maintaining monopoly power and overcharging purchasers in violation of the federal antitrust laws.  Plaintiffs alleged that Abbott had used its monopoly with respect to its anti-HIV medicine Norvir (ritonavir) to protect its monopoly power for another highly profitable Abbott HIV drug, Kaletra.  This antitrust class action settled for $52 million after four days of a jury trial in federal court in Oakland, California.  (Case No. 07-5985 (N.D. Cal.)).

- *In re Nifedipine Antitrust Litigation:*  Berger & Montague played a major role (serving on the executive committee) in this antitrust class action on behalf of direct purchasers of generic versions of the anti-hypertension drug Adalat (nifedipine).  After eight years of hard-fought litigation, the court approved a total of $35 million in settlements.  (Case No. 1:03-223 (D.D.C.)).

- *In re DDAVP Direct Purchaser Antitrust Litigation:*  Berger & Montague served as co-lead counsel in a case that charged defendants with using sham litigation and a fraudulently obtained patent to delay the entry of generic versions of the prescription drug DDAVP.  Berger & Montague achieved a $20.25 million settlement only after winning a precedent-setting victory before the United States Court of Appeals for the Second Circuit that ruled that direct purchasers had standing to recover overcharges arising from a patent-holder's misuse of an allegedly fraudulently obtained patent.  (Case No. 05-2237 (S.D.N.Y.)).

- *In re Terazosin Antitrust Litigation:*  Berger & Montague was one of a small group of counsel in a case alleging that Abbott Laboratories was paying its competitors to refrain from introducing less expensive generic versions of Hytrin.  The case settled for $74.5 million.  (Case No. 99-MDL-1317 (S.D. Fla.)).

- *In re Remeron Antitrust Litigation:*  Berger & Montague was one of a small group of counsel in a case alleging that the manufacturer of this drug was paying its competitors to refrain from introducing less expensive generic versions of Remeron.  The case settled for $75 million.  (2:02-CV-02007-FSH (D. N.J.)).

- *In re Tricor Antitrust Litigation:*  Berger & Montague was one of a small group of counsel in a case alleging that the manufacturer of this drug was paying its competitors to refrain from introducing less expensive generic versions of Tricor.  The case settled for $250 million.  (No. 05-340 (D. Del.)).

- *In re Relafen Antitrust Litigation:*  Berger & Montague was one of a small group of firms who prepared for the trial of this nationwide class action against GlaxoSmithKline, which was alleged to have used fraudulently-procured patents to block competitors from marketing less-expensive generic versions of its popular nonsteroidal anti-inflammatory drug, Relafen (nabumetone).  Just before trial, the case was settled for $175 million.  (No. 01-12239-WGY (D. Mass.)).

- *In re Cardizem CD Antitrust Litigation:*  Berger & Montague served on the executive committee of firms appointed to represent the class of direct purchasers of Cardizem CD.  The suit charged that Aventis (the brand-name drug manufacturer of Cardizem CD) entered into an illegal agreement to pay Andrx (the maker of a generic substitute to Cardizem CD) millions of dollars to delay the entry of the less expensive generic product.  On November 26, 2002, the district court approved a final settlement against both defendants for $110 million.  (No. 99-MD-1278, MDL No. 1278 (E.D. Mich.)).

- *In re Buspirone Antitrust Litigation:*  The firm served on the court-appointed steering committee in this class action, representing a class of primarily pharmaceutical wholesalers and resellers.  The Buspirone class action alleged that pharmaceutical manufacturer BMS engaged in a pattern of illegal conduct surrounding its popular anti-anxiety medication, Buspar, by paying a competitor to refrain from marketing a generic version of Buspar, improperly listing a patent with the FDA, and wrongfully prosecuting patent infringement actions against generic competitors to Buspar.  On April 11, 2003, the Court approved a $220 million settlement.  (MDL No. 1410 (S.D.N.Y.)).

- *North Shore Hematology-Oncology Assoc., Inc. v. Bristol-Myers Squibb Co.:*  The firm was one of several prosecuting an action complaining of Bristol Myers's use of invalid patents to block competitors from marketing more affordable generic versions of its life-saving cancer drug, Platinol (cisplatin).  The case settled for $50 million.  (No. 1:04CV248 (EGS) (D.D.C.)).

## Commercial Litigation

Berger & Montague helps business clients achieve extraordinary successes in a wide variety of complex commercial litigation matters. Our attorneys appear regularly on behalf of clients in high stakes federal and state court commercial litigation across the United States.  We work with our clients to develop a comprehensive and detailed litigation plan, and then organize, allocate and deploy whatever resources are necessary to successfully prosecute or defend the case.

- *Erie Power Technologies, Inc. v. Aalborg Industries A/S, et al.:*  Berger & Montague represented a trustee in bankruptcy against officers and directors and the former corporate parent and obtained a very favorable confidential settlement.  (No. 04-282E (W.D. Pa.)).

- *Moglia v. Harris et al.:*  Berger & Montague represented a liquidating trustee against the officers of U.S. Aggregates, Inc. and obtained a settlement of $4 million.  (No. C 04 2663 (CW) (N.D. Cal.)).

- *Gray v. Gessow et al.:*  The firm represented a litigation trust and brought two actions, one against the officers and directors of Sunterra Inc. an insolvent company, and the second against Sunterra's accountants, Arthur Andersen and obtained an aggregate settlement of $4.5 million.  (Case No. MJG 02-CV-1853 (D. Md.) and No. 6:02-CV-633-ORL-28JGG (M.D. Fla.)).

▪ ***Fitz, Inc. v. Ralph Wilson Plastics Co.*:**  The firm served as sole lead counsel and obtained, after 7 years of litigation, in 2000 a settlement whereby fabricator class members could obtain full recoveries for their losses resulting from defendants' defective contact adhesives.  (No. 1-94-CV-06017 (D.N.J.)).

▪ ***Provident American Corp. and Provident Indemnity Life Insurance Company v. The Loewen Group Inc. and Loewen Group International Inc.*:**  Berger & Montague settled this individual claim, alleging a 10-year oral contract (despite six subsequent writings attempting to reduce terms to writing, each with materially different terms added, all of which were not signed), for a combined payment in cash and stock of the defendant, of $30 Million.  (No. 92-1964 (E.D. Pa.)).

▪ ***Marilou Whitney (Estate of Cornelius Vanderbilt Whitney) v. Turner/Time Warner:***  Berger & Montague settled this individual claim for a confidential amount, seeking interpretation of the distribution agreement for the movie, *Gone with the Wind* and undistributed profits for the years 1993-1997, with forward changes in accounting and distribution.

▪ ***American Hotel Holdings Co., et. al v. Ocean Hospitalities, Inc., et. al.*:**  Berger & Montague defended against a claim for approximately $16 million and imposition of a constructive trust, arising out of the purchase of the Latham Hotel in Philadelphia.  Berger & Montague settled the case for less than the cost of the trial that was avoided.  (June Term, 1997, No. 2144 (Pa. Ct. Com. Pl., Phila. Cty.))

▪ ***Creative Dimensions and Management, Inc. v. Thomas Group, Inc.*:**  Berger & Montague defended this case against a claim for $30 million for breach of contract.  The jury rendered a verdict in favor of Berger & Montague's client on the claim (i.e., $0), and a verdict for the full amount of Berger & Montague's client on the counterclaim against the plaintiff.  (No. 96-6318 (E.D. Pa.)).

▪ ***Robert S. Spencer, et al. v. The Arden Group, Inc., et al.*:**  Berger & Montague represented an owner of limited partnership interests in several commercial real estate partnerships in a lawsuit against the partnerships' general partner.  The terms of the settlement are subject to a confidentiality agreement.  (Aug. Term, 2007, No. 02066 (Pa. Ct. Com. Pl., Phila. Cty. - Commerce Program)).

▪ ***Forbes v. GMH:***  Berger & Montague represented a private real estate developer/investor who sold a valuable apartment complex to GMH for cash and publicly-held securities.  The case which claimed securities fraud in connection with the transaction settled for a confidential sum which represented a significant portion of the losses experienced.  (No. 07-cv-00979 (E.D. Pa.)).

## Commodities and Options

Berger & Montague ranks among the country's preeminent firms for managing and trying complex commodities and options related cases on behalf of individuals and as class actions.  The Firm's commodities clients include individual hedge and speculation traders, hedge funds, energy firms, investment funds, and precious metals clients.

▪ ***In re MF Global Holdings Ltd. Investment Litigation*:**  Berger & Montague is one of two co-lead counsel representing thousands of commodities account holders who fell victim to the alleged massive theft and misappropriation of client funds at the major global commodities brokerage firm MF Global.  Over the last year, substantial settlements have been reached with JPMorgan Chase Bank, the MF Global SIPA Trustee, and the CME Group.  These settlements will ultimately enable MF Global customers to recover over one billion dollars.  Berger & Montague is continuing to pursue claims against former directors and officers of MF Global, including Jon Corzine, and against MF Global's former auditor, PricewaterhouseCoopers.  (No.

7

11-cv-07866 (S.D.N.Y.).

- ▪ ***In re Commodity Exchange, Inc., Gold Futures and Options Trading Litigation***: Berger & Montague is one of two co-lead counsel representing traders of traders of gold-based derivative contracts, physical gold, and gold-based securities against The Bank of Nova Scotia, Barclays Bank plc, Deutsche Bank AG, HSBC Bank plc, Société Générale and the London Gold Market Fixing Limited. Plaintiffs allege that the defendants, members of the London Gold Market Fixing Limited, which sets an important benchmark price for gold, conspired to manipulate this benchmark for their collective benefit. (1:14-md-02548 (S.D.N.Y.)).

- ▪ ***In re Libor-Based Financial Instruments Antitrust Litigation***: Berger & Montague represents investors who transacted in Eurodollar futures contracts and options on futures contracts on the Chicago Mercantile Exchange ("CME") between August 2007 and May 2010. The lawsuit alleges that the defendant banks knowingly and intentionally understated their true borrowing costs. By doing so, the defendant banks caused Libor to be calculated or suppressed at artificially low rates. The defendants' alleged manipulation of Libor allowed their banks to pay artificially low interest rates to purchasers of Libor-based financial instruments. (No. 1:11-md-02262-NRB (S.D.N.Y.)).

- ▪ ***In re North Sea Brent Crude Oil Futures Litigation***: Berger & Montague, P.C. filed a proposed class action on behalf of traders of Brent Crude Oil futures contracts against Royal Dutch Shell plc, BP plc, Statoil ASA, Morgan Stanley, Trafigura Beheer B.V., Trafigura AG, Phibro Trading LLC, and Vitol, S.A. (collectively, "Defendants") during the period of at least 2002 through the present. The complaint alleges that the Defendants violated the antitrust laws and the Commodity Exchange Act by using Platts reporting service's methodology for reporting prices to control the Brent Crude Oil physical market and thereby to manipulate Brent Crude Oil prices and the prices of Brent Crude oil futures contracts traded on the New York Mercantile Exchange ("NYMEX") and the Intercontinental Exchange ("ICE"). (No. 13-cv-8240 (S.D.N.Y.)).

- ▪ ***Brown, et al. v. Kinross Gold, U.S.A., et al.***: Berger & Montague was one of two co-lead counsel in this action alleging that a leading gold mining company illegally forced out preferred shareholders. The action resulted in a settlement of $29.25 million in cash and $6.5 million in other consideration (approximately 100% of damages and accrued dividends after fees and costs). (No. 02-cv-00605 (D.N.V.)).

## Consumer Protection

Berger & Montague's Consumer Protection Group protects consumers when they are injured by false or misleading advertising, defective products, data privacy breaches, and various other unfair trade practices. Consumers too often suffer the brunt of corporate wrongdoing, particularly in the area of false or misleading advertising, defective products, and data or privacy breaches.

- ▪ ***In re: CertainTeed Fiber Cement Siding Litigation***, MDL No. 2270 (E.D. Pa.). The firm, as one of two Co-Lead Counsel firms obtained a settlement of more than $103 million in this multidistrict products liability litigation concerning CertainTeed Corporation's fiber cement siding, on behalf of a nationwide class.

- ▪ ***Countrywide Predatory Lending Enforcement Action:*** Berger & Montague advised the Ohio Attorney General (and several other state attorneys general) regarding predatory lending in a landmark law enforcement proceeding against *Countrywide* (and its parent, Bank of America) culminating in 2008 in mortgage-related modifications and other relief for borrowers across the country valued at some $8.6 billion.

- ▪ ***In re Pet Foods Product Liability Litigation***: The firm served as one of plaintiffs' co-lead counsel in this multidistrict class action suit seeking to redress the harm resulting from the manufacture and sale of contaminated dog and cat food. The case settled for $24 million. Many terms of the settlement are unique

8

and highly beneficial to the class, including allowing class members to recover up to 100% of their economic damages without any limitation on the types of economic damages they may recover.  (1:07-cv-02867 (D.N.J.), MDL Docket No. 1850 (D.N.J.)).

▪   *In re TJX Companies Retail Security Breach Litigation*:  The firm served as co-lead counsel in this multidistrict litigation brought on behalf of individuals whose personal and financial data was compromised in the then-largest theft of personal data in history.  The breach involved more than 45 million credit and debit card numbers and 450,000 customers' driver's license numbers.  The case was settled for benefits valued at over $200 million. Class members whose driver's license numbers were at risk were entitled to 3 years of credit monitoring and identity theft insurance (a value of $390 per person based on the retail cost for this service), reimbursement of actual identity theft losses, and reimbursement of driver's license replacement costs.  Class members whose credit and debit card numbers were at risk were entitled to cash of $15-$30 or store vouchers of $30-$60.  (No. 1:07-cv-10162-WGY, (D. Mass.)).

▪   *In Re: Heartland Payment Systems, Inc. Customer Data Security Breach Litigation:*  The firm served on the Executive Committee of this multidistrict litigation and obtained a settlement of cash and injunctive relief for a class of 130 million credit card holders whose credit card information was stolen by computer hackers.  The breach was the largest known theft of credit card information in history.  The settlement is subject to court approval.  (No. 4:09-MD-2046 (S.D. Tex. 2009)).

▪   *In re: Countrywide Financial Corp. Customer Data Security Breach Litigation*:  The firm served on the Executive Committee of this multidistrict litigation and obtained a settlement for a class of 17 million individuals whose personal information was at risk when a rogue employee sold their information to unauthorized third parties. Settlement benefits included:  (i) reimbursement of several categories of out-of-pocket costs; (ii) credit monitoring and identity theft insurance for 2 years for consumers who did not accept Countrywide's prior offer of credit monitoring; and (iii) injunctive relief.  The settlement was approved by the court in 2010.  (3:08-md-01998-TBR (W.D. Ky. 2008)).

▪   *In re Educational Testing Service Praxis Principles of Learning and Teaching:  Grades 7-12 Litigation*:  The firm served on the plaintiffs' steering committee and obtained an $11.1 million settlement in 2006 on behalf of persons who were incorrectly scored on a teacher's licensing exam.  (MDL No. 1643 (E.D. La.)).

▪   *Vadino, et al. v. American Home Products Corporation, et al.:*  The firm filed a class complaint different from that filed by any other of the filing firms in the New Jersey State Court "Fen Phen" class action, and the class sought in the firm's complaint was ultimately certified.  It was the only case anywhere in the country to include a claim for medical monitoring.  In the midst of trial, the New Jersey case was folded into a national settlement which occurred as the trial was ongoing, and which was structured to include a medical monitoring component worth in excess of $1 billion.  (Case Code No. 240 (N.J. Super. Ct.)).

▪   *Parker v. American Isuzu Motors, Inc.*:  The firm served as sole lead counsel and obtained a settlement whereby class members recovered up to $500 each for economic damages resulting from accidents caused by faulty brakes.  (Sept. Term 2003, No. 3476 (Pa. Ct. Com. Pl., Phila. Cty.)).

▪   *Salvucci v. Volkswagen of America, Inc. d/b/a Audi of America, Inc.*:  The firm served as co-lead counsel in litigation brought on behalf of a nationwide class alleging that defendants failed to disclose that its vehicles contained defectively designed timing belt tensioners and associated parts and that defendants misrepresented the appropriate service interval for replacement of the timing belt tensioner system.  After extensive discovery, a settlement was reached.  (Docket No. ATL-1461-03 (N.J. Sup. Ct. 2007)).

9

- ▪ ***Burgo v. Volkswagen of America, Inc. d/b/a Audi of America, Inc.:*** The firm served as co-lead counsel in litigation brought on behalf of a nationwide class against premised on defendants' defective tires that were prone to bubbles and bulges. Counsel completed extensive discovery and class certification briefing. A settlement was reached while the decision on class certification was pending. The settlement consisted of remedies including total or partial reimbursement for snow tires, free inspection/replacement of tires for those who experienced sidewall bubbles, blisters, or bulges, and remedies for those class members who incurred other costs related to the tires' defects. (Docket No. HUD-L-2392-01 (N.J. Sup. Ct. 2001)).

- ▪ ***Crawford v. Philadelphia Hotel Operating Co.:*** The firm served as co-lead counsel and obtained a settlement where persons who contracted food poisoning at a business convention recovered $1,500 each. (March Term, 2004, No. 000070 (Pa. Ct. Com. Pl., Phila. Cty.)).

- ▪ ***Block v. McDonald's Corporation:*** The firm served as co-lead counsel and obtained a settlement of $12.5 million with McDonald's stemming from its failure to disclose the use of beef fat in its french fries. (No. 01-CH-9137 (Ill. Cir. Ct., Cook Cty.)).

## Corporate Governance and Shareholder Rights

Berger & Montague protects the interests of individual and institutional investors in shareholder derivative actions in state and federal courts across the United States. Our attorneys help individual and institutional investors reform poor corporate governance, as well as represent them in litigation against directors of a company for violating their fiduciary duty or provide guidance on shareholder rights.

- ● ***Emil Rossdeutscher and Dennis Kelly v. Viacom:*** The firm, as lead counsel, obtained a settlement resulting in a fund of $14.25 million for the class. (C.A. No. 98C-03-091 (JEB) (Del. Super. Ct.)).

- ● ***Fox v. Riverview Realty Partners, f/k/a Prime Group Realty Trust, et al.:*** The firm, as lead counsel, obtained a settlement resulting in a fund of $8.25 million for the class.

## Employment Law

The Berger & Montague Employment Law group works tirelessly to safeguard the rights of employees, and devote all of their energies to helping our firm's clients achieve their goals. Our attorneys' understanding of federal and state wage and hour laws, federal and state civil rights and discrimination laws, ERISA, the WARN Act, laws protecting whistleblowers, such as federal and state False Claims Acts, and other employment laws, allows us to develop creative strategies to vindicate our clients' rights and help them secure the compensation to which they are entitled.

- ▪ ***Jantz v. Social Security Administration:*** The firm served as co-lead counsel and obtained a settlement on behalf of employees with targeted disabilities ("TDEs") alleged that SSA discriminated against TDEs by denying them promotional and other career advancement opportunities. The settlement was reached after more than ten years of litigation, and the Class withstood challenges to class certification on four separate occasions. The settlement includes a monetary fund of $9.98 million and an unprecedented package of extensive programmatic changes valued at approximately $20 million. EEOC No. 531-2006-00276X (2015).

- ▪ ***Ciamillo v. Baker Hughes, Incorporated:*** The firm served as lead counsel and obtained a settlement of $5 million on behalf of a class of oil and gas workers who did not receive any overtime compensation for working hours in excess of 40 per week. (Civil Action No. 14-cv-81 (D. Alaska)).

- ▪ ***Employees Committed for Justice v. Eastman Kodak Company:***  The firm served as co-lead counsel and obtained a settlement of $21.4 million on behalf of a nationwide class of African American employees of Kodak alleging a pattern and practice of racial discrimination (pending final approval).  A significant opinion issued in the case is *Employees Committed For Justice v. Eastman Kodak Co.*, 407 F. Supp. 2d 423 (W.D.N.Y. 2005) (denying Kodak's motion to dismiss).  No. 6:04-cv-06098 (W.D.N.Y.)).

- ▪ ***Salcido v. Cargill Meat Solutions Corp.:***  The firm served as co-lead counsel and obtained a settlement of $7.5 million on behalf of a class of thousands of employees of Cargill Meat Solutions Corp. alleging that they were forced to work off-the-clock and during their breaks.  This is one of the largest settlements of this type of case involving a single plant in U.S. history.  (Civil Action Nos. 1:07-cv-01347-LJO-GSA and 1:08-cv-00605-LJO-GSA (E.D. Cal.)).

- ▪ ***Miller v. Hygrade Food Products, Inc.:***  The firm served as lead counsel and obtained a settlement of $3.5 million on behalf of a group of African American employees of Sara Lee Foods Corp. to resolve charges of racial discrimination and retaliation at its Ball Park Franks plant.  (No. 99-1087 (E.D. Pa.)).

- ▪ ***Chabrier v. Wilmington Finance, Inc.:***  The firm served as co-lead counsel and obtained a settlement of $2,925,000 on behalf of loan officers who worked in four offices to resolve claims for unpaid overtime wages.  A significant opinion issued in the case is *Chabrier v. Wilmington Finance, Inc.*, 2008 WL 938872 (E.D. Pa. April 04, 2008) (denying the defendant's motion to decertify the class).  (No. 06-4176 (E.D. Pa.)).

- ▪ ***Bonnette v. Rochester Gas & Electric Co.:***  The firm served as co-lead counsel and obtained a settlement of $2 million on behalf of a class of African American employees of Rochester Gas & Electric Co. to resolve charges of racial discrimination in hiring, job assignments, compensation, promotions, discipline, terminations, retaliation, and a hostile work environment.        (No. 07-6635 (W.D.N.Y.)).

- ▪ ***Confidential.***  The firm served as lead counsel and obtained a settlement of $6 million on behalf of a group of African American employees of a Fortune 100 company to resolve claims of racial discrimination, as well as injunctive relief which included significant changes to the Company's employment practices (settled out of court while charges of discrimination were pending with the U.S. Equal Employment Opportunity Commission).

## Environmental and Mass Tort

Berger & Montague lawyers are trailblazers in the fields of environmental class action litigation and mass torts. Our attorneys have earned their reputation in the fields of environmental litigation and mass torts by successfully prosecuting some of the largest, most well-known cases of our time. Our Environmental & Mass Tort Group also prosecutes significant claims for personal injury, commercial losses, property damage, and environmental response costs. In 2016 Berger & Montague was named an Elite Trial Lawyer Finalist in special litigation (environmental) by The National Law Journal.

- ▪ ***Cook v. Rockwell International Corporation:***  In February 2006, the firm won a $554 million jury verdict on behalf of thousands of property owners whose homes were exposed to plutonium or other toxins. Judgment in the case was entered by the court in June 2008 which, with interest, totaled $926 million. Recognizing this tremendous achievement, the Public Justice Foundation bestowed its prestigious Trial Lawyer of the Year Award for 2009 on Mr. Davidoff, David F. Sorensen, and the entire trial team for their "long and hard-fought" victory against "formidable corporate and government defendants."  (No. 90-cv-00181-JLK (D. Colo.)).  The jury verdict in that case was vacated on appeal in 2010, but on a second trip to the Tenth Circuit, Plaintiffs secured a victory in 2015, with the case then being sent back to the district

court.  A $375 million proposed settlement was reached in May 2016, and final approval by the district court was obtained in April, 2017

▪ ***In re Exxon Valdez Oil Spill Litigation:***  On September 16, 1994, a jury trial of several months duration resulted in a record punitive damages award of $5 billion against the Exxon defendants as a consequence of one of the largest oil spills in U.S. history.  The award was reduced to $507.5 million pursuant to a Supreme Court decision.  David Berger was co-chair of the plaintiffs' discovery committee (appointed by both the federal and state courts).  Harold Berger served as a member of the organizing case management committee. H. Laddie Montague was specifically appointed by the federal court as one of the four designated trial counsel.  Both Mr. Montague and Peter Kahana shared (with the entire trial team) the 1995 "Trial Lawyer of the Year Award" given by the Trial Lawyers for Public Justice.  (No. A89-0095-CVCHRH (D. Alaska)).

▪ ***In re Ashland Oil Spill Litigation:***  The firm led by Harold Berger served as co-lead counsel and obtained a $30 million settlement for damages resulting from a very large oil spill.  (Master File No. M-14670 (W.D. Pa.)).

▪ ***State of Connecticut Tobacco Litigation:***  Berger & Montague was one of three firms to represent the State of Connecticut in a separate action in state court against the tobacco companies.  The case was litigated separate from the coordinated nationwide actions.  Although eventually Connecticut joined the national settlement, its counsel's contributions were recognized by being awarded the fifth largest award among the states from the fifty states' Strategic Contribution Fund.

▪ ***In re School Asbestos Litigation:***  As co-lead counsel, the firm successfully litigated a case in which a nationwide class of elementary and secondary schools and school districts suffering property damage as a result of asbestos in their buildings were provided relief.  Pursuant to an approved settlement, the class received in excess of $70 million in cash and $145 million in discounts toward replacement building materials.  (No. 83-0268 (E.D. Pa.)).

▪ ***Drayton v. Pilgrim's Pride Corp.:***  The firm served as counsel in a consolidation of wrongful death and other catastrophic injury cases brought against two manufacturers of turkey products, arising out of a 2002 outbreak of Listeria Monocytogenes in the Northeastern United States, which resulted in the recall of over 32 million pounds of turkey – the second largest meat recall in U.S. history at that time.  A significant opinion issued in the case is *Drayton v. Pilgrim's Pride Corp.*, 472 F. Supp. 2d 638 (E.D. Pa. 2006) (denying the defendants' motions for summary judgment and applying the alternative liability doctrine).  All of the cases settled on confidential terms in 2006.  (No. 03-2334 (E.D. Pa.)).

▪ ***In re SEPTA 30th Street Subway/Elevated Crash Class Action:***  Berger & Montague represented a class of 220 persons asserting injury in a subway crash.  Despite a statutory cap of $1 million on damages recovery from the public carrier, and despite a finding of sole fault of the public carrier in the investigation by the National Highway Transit Safety Administration, Berger & Montague was able to recover an aggregate of $3.03 million for the class.  (1990 Master File No. 0001 (Pa. Ct. Com. Pls., Phila. Cty.)).

▪ ***In re Three Mile Island Litigation:***  As lead/liaison counsel, the firm successfully litigated the case and reached a settlement in 1981 of $25 million in favor of individuals, corporations and other entities suffering property damage as a result of the nuclear incident involved.  (C.A. No. 79-0432 (M.D. Pa.)).

▪ ***In Re Louisville Explosions Litigation:***  This case was one of the earliest examples of a class action trial of an environmental class action.  It redressed damage to private property owners and employees resulting from a February 13, 1981 sewer explosion which was one of the largest explosion mishaps in U.S. history.  In February, 1984 the matter went to trial, and after the plaintiffs' case and the denial of motions for direct

verdict the litigation settled for net payments to the class members of 100% to 300% or more of direct monetary damages, depending on their zone's distance from the streets that exploded.  Claimants lined up near the claims office for blocks to file claims.  Mr. Davidoff was lead counsel and lead trial counsel.  (No. CV 81-0080, W.D. Ky.).

## ERISA and Employee Benefits

Berger & Montague represents employees who have claims under the federal Employee Retirement Income Security Act.  We litigate cases on behalf of employees whose 401(k) and pension investments have suffered severe losses as a result of the breach of fiduciary duties by plan administrators and the companies they represent. Berger & Montague has recovered hundreds of millions of dollars in lost retirement benefits for American workers, and also favorably structured their retirement plans.

- ▪ *In re Unisys Corp. Retiree Medical Benefits:*  The firm, as co-lead counsel, handled the presentation of over 70 witnesses, 30 depositions, and over 700 trial exhibits in this action that has resulted in partial settlements in 1990 of over $110 million for retirees whose health benefits were terminated.  (MDL No. 969 (E.D. Pa.)).

- ▪ *Local 56 U.F.C.W. v. Campbell Soup Co.*:  The firm represented a class of retired Campbell Soup employees in an ERISA class action to preserve and restore retiree medical benefits.  A settlement yielded benefits to the class valued at $114.5 million.  (No. 93-MC-276 (SSB) (D.N.J.)).

## Insurance and Financial Services Products / Services

When insurance companies and affiliated financial services entities engage in fraudulent, deceptive or unfair practices, Berger & Montague helps injured parties recover their losses.  We focus on fraudulent, deceptive and unfair business practices across all lines of insurance and financial products and services sold by insurers and their affiliates, which include annuities, securities and other investment vehicles.

- ▪ *Spencer v. Hartford Financial Services Group, Inc.:*  The firm, together with co-counsel, prosecuted this national class action against The Hartford Financial Services Group, Inc. and its affiliates in the United States District Court for the District of Connecticut (*Spencer v. Hartford Financial Services Group, Inc.*, Case No. 05-cv-1681) on behalf of approximately 22,000 claimants, each of whom entered into structured settlements with Hartford property and casualty insurers to settle personal injury and workers' compensation claims.  To fund these structured settlements, the Hartford property and casualty insurers purchased annuities from their affiliate, Hartford Life.  By purchasing the annuity from Hartford Life, The Hartford companies allegedly were able to retain up to 15% of the structured amount of the settlement in the form of undisclosed costs, commissions and profit - all of which was concealed from the settling claimants.  On March 10, 2009, the U.S. District Court certified for trial claims on behalf of two national subclasses for civil RICO and fraud (256 F.R.D. 284 (D. Conn. 2009)).  On October 14, 2009, the Second Circuit Court of Appeals denied The Hartford's petition for interlocutory appeal under Federal Rule of Civil Procedure 23(f).On September 21, 2010, the U.S. District Court entered judgment granting final approval of a $72.5 million cash settlement.

- ▪ *Nationwide Mutual Insurance Company v. O'Dell:*  The firm, together with co-counsel, prosecuted this class action against Nationwide Mutual Insurance Company in West Virginia Circuit Court, Roane County (*Nationwide Mutual Insurance Company v. O'Dell*, Case No. 00-C-37), on behalf of current and former West Virginia automobile insurance policyholders, which arose out of Nationwide's failure, dating back to 1993, to offer policyholders the ability to purchase statutorily-required optional levels of underinsured ("UIM") and uninsured ("UM") motorist coverage in accordance with West Virginia Code 33-6-31.  The court certified a trial class seeking monetary damages, alleging that the failure to offer these optional levels of

coverage, and the failure to provide increased first party benefits to personal injury claimants, breached Nationwide's insurance policies and its duty of good faith and fair dealing, and violated the West Virginia Unfair Trade Practices Act.  On June 25, 2009, the court issued final approval of a settlement that provided a minimum estimated value of $75 million to Nationwide auto policyholders and their passengers who were injured in an accident or who suffered property damage.

## Lending Practices and Borrowers' Rights

Berger & Montague's attorneys fight vigorously to protect the rights of borrowers when they are injured by the practices of banks and other financial institutions that lend money or service borrowers' loans. Berger & Montague has successfully obtained multi-million dollar class action settlements for nationwide classes of borrowers against banks and financial institutions and works tirelessly to protect the rights of borrowers suffering from these and other deceptive and unfair lending practices.

- ▪ *Coonan v. Citibank, N.A.*:  The firm, as Co-Lead Counsel, prosecuted this national class action against Citibank and its affiliates in the United States District Court for the Northern District of New York concerning alleged kickbacks Citibank received in connection with its force-placed insurance programs.  The firm obtained a settlement of $122 million on behalf of a class of hundreds of thousands of borrowers.

- ▪ *Arnett v. Bank of America, N.A.*:  The firm, as Co-Lead Counsel, prosecuted this national class action against Bank of America and its affiliates in the United States District Court for the District of Oregon concerning alleged kickbacks received in connection with its force-placed flood insurance program.  The firm obtained a settlement of $31 million on behalf of a class of hundreds of thousands of borrowers.

- ▪ *Clements v. JPMorgan Chase Bank, N.A.*:  The firm, as Co-Lead Counsel, prosecuted this national class action against JPMorgan Chase and its affiliates in the United States District Court for the Northern District of California concerning alleged kickbacks received in connection with its force-placed flood insurance program.  The firm obtained a settlement of $22,125,000 on behalf of a class of thousands of borrowers.

- ▪ *Holmes v. Bank of America, N.A.*:  The firm, as Co-Lead Counsel, prosecuted this national class action against Bank of America and its affiliates in the United States District Court for the Western District of North Carolina concerning alleged kickbacks received in connection with its force-placed wind insurance program.  The firm obtained a settlement of $5.05 million on behalf of a class of thousands of borrowers.

## Representing Opt-Outs in Class Actions

Berger & Montague offers exceptional representation of businesses, institutional investors, employee benefit or ERISA plans and governmental entities when they wish to opt out of securities and antitrust class actions filed by others and file an individual lawsuit to maximize their recovery or have a say in the proceedings.  We advise and represent clients who may opt out of class actions filed by others – often securities fraud cases and price-fixing and monopolization antitrust claims – and help them pursue their

claims independently of the class action, where they often stand to receive a much greater financial recovery.

## Securities Litigation

In the area of securities litigation, the firm has represented public institutional investors – such as the retirement funds for the States of Pennsylvania, Connecticut, New Hampshire, New Jersey, Louisiana and Ohio, as well as the City of Philadelphia and numerous individual investors and private institutional investors. The firm was co-lead counsel in the *Melridge Securities Litigation* in the Federal District Court in Oregon, in which jury verdicts of $88.2 million and a RICO judgment of $239 million were obtained. Berger & Montague has served as lead or co-lead counsel in numerous other major securities class action cases where substantial settlements were achieved on behalf of investors.

- ***In re Merrill Lynch Securities Litigation:*** Berger & Montague, as co-lead counsel, obtained a recovery of $475 million for the benefit of the class in one of the largest recoveries among the recent financial crisis cases. (No. 07-cv-09633 (S.D.N.Y.)).

- ***In re Sotheby's Holding, Inc. Securities Litigation***: The firm, as lead counsel, obtained a $70 million settlement, of which $30 million was contributed, personally, by an individual defendant. (No. 00-cv-1041 (DLC) (S.D.N.Y.)).

- ***In re: Oppenheimer Rochester Funds Group Securities Litigation:*** The firm, as co-lead counsel, obtained a $89.5 million settlement on behalf of investors in six tax-exempt bond mutual funds managed by OppenheimerFunds, Inc. (No. 09-md-02063-JLK (D. Col.)).

- ***In re KLA Tencor Securities Litigation:*** The firm, as a member of Plaintiffs' Counsel's Executive Committee, obtained a cash settlement of $65 million in an action on behalf of investors against KLA-Tencor and certain of its officers and directors. (No. 06-cv-04065 (N.D. Cal.)).

- ***Ginsburg v. Philadelphia Stock Exchange, Inc., et al.:*** The firm represented certain shareholders of the Philadelphia Stock Exchange in the Delaware Court of Chancery and obtained a settlement valued in excess of $99 million settlement. (C.A. No. 2202-CC (Del. Ch.)).

- ***In re Sepracor Inc. Securities Litigation:*** The firm, as co-lead counsel, obtained a settlement of $52.5 million for the benefit of bond and stock purchaser classes. (No. 02-cv-12235-MEL (D. Mass.)).

- ***In re CIGNA Corp. Securities Litigation:*** The firm, as co-lead counsel, obtained a settlement of $93 million for the benefit of the class. (Master File No. 2:02-cv-8088 (E.D. Pa.)).

- ***In re Fleming Companies, Inc. Securities Litigation:*** The firm, as lead counsel, obtained a class settlement of $94 million for the benefit of the class. (No. 5-03-MD-1530 (TJW) (E.D. Tex.)).

- ***In re Xcel Energy Inc. Securities, Derivative & "ERISA" Litigation:*** The firm, as co-lead counsel in the securities actions, obtained a cash settlement of $80 million on behalf of investors against Xcel Energy and certain of its officers and directors. (No. 02-cv-2677 (DSD/FLN) (D. Minn.)).

- ***In re NetBank, Inc. Securities Litigation:*** The firm served as lead counsel in this certified class action on behalf of the former common shareholders of NetBank, Inc. The $12.5 million settlement, which occurred after class certification proceedings and substantial discovery, is particularly noteworthy because it is one of

the few successful securities fraud class actions litigated against a subprime lender and bank in the wake of the financial crisis.  (No. 07-cv-2298-TCB (N.D. Ga.)).

- **Brown v. Kinross Gold U.S.A. Inc.:**  The firm represented lead plaintiffs as co-lead counsel and obtained $29.25 million cash settlement and an additional $6,528,371 in dividends for a gross settlement value of $35,778,371.  (No. 02-cv-0605 (D. Nev.))  All class members recovered 100% of their damages <u>after</u> fees and expenses.

- **In re Campbell Soup Co. Securities Litigation:**  The firm, as co-lead counsel, obtained a settlement of $35 million for the benefit of the class.  (No. 00-cv-152 (JEI) (D.N.J.)).

- **In re Premiere Technologies, Inc. Securities Litigation:**  The firm, as co-lead counsel, obtained a class settlement of over $20 million in combination of cash and common stock.  (No.1:98-cv-1804-JOF (N.D. Ga.)).

- **In re PSINet, Inc., Securities Litigation:**  The firm, as co-lead counsel, obtained a settlement of $17.83 million on behalf of investors.  (No. 00-cv-1850-A (E.D. Va.)).

- **In re Safety-Kleen Corp. Securities Litigation :**  The firm, as co-lead counsel, obtained a class  settlement in the amount of $45 million against Safety-Kleen's outside accounting firm and certain of the Company's officers and directors.  The final settlement was obtained 2 business days before the trial was to commence. (No. 3:00-cv-736-17 (D.S.C.)).

- **The City Of Hialeah Employees' Retirement System v. Toll Brothers, Inc.:**  The firm, as co-lead counsel, obtained a class settlement of $25 million against Home Builder Toll Brothers, Inc.  (No. 07-cv-1513 (E.D. Pa.)).

- **In re Rite Aid Corp. Securities Litigation:**  The firm, as co-lead counsel, obtained settlements totaling $334 million against Rite Aid's outside accounting firm and certain of the company's former officers.  (No. 99-cv-1349 (E.D. Pa.)).

- **In re Sunbeam Inc. Securities Litigation:**   As co-lead counsel and designated lead trial counsel (by Mr. Davidoff), the firm obtained a settlement on behalf of investors of $142 million in the action against Sunbeam's outside accounting firm and Sunbeam's officers.  (No. 98-cv-8258 (S.D. Fla.)).

- **In re Waste Management, Inc. Securities Litigation:**  In 1999, the firm, as co-lead counsel, obtained a class settlement for investors of $220 million cash which included a settlement against Waste Management's outside accountants.  (No. 97-cv-7709 (N.D. Ill.)).

- **In re IKON Office Solutions Inc. Securities Litigation:**  The firm, serving as both co-lead and liaison counsel, obtained a cash settlement of $111 million in an action on behalf of investors against IKON and certain of its officers.  (MDL Dkt. No. 1318 (E.D. Pa.)).

- **In re Melridge Securities Litigation:**  The firm served as lead counsel and co-lead trial counsel for a class of purchasers of Melridge common stock and convertible debentures. A four-month jury trial yielded a verdict in plaintiffs' favor for $88.2 million, and judgment was entered on RICO claims against certain defendants for $239 million.  The court approved settlements totaling $57.5 million.  (No. 87-cv-1426 FR (D. Ore.)).

- **Aldridge v. A.T. Cross Corp.:**  The firm represented a class of investors in a securities fraud class action against A.T. Cross, and won a significant victory in the U.S. Court of Appeals for the First Circuit when that

16

Court reversed the dismissal of the complaint and lessened the pleading standard for such cases in the First Circuit, holding that it would not require plaintiffs in a shareholder suit to submit proof of financial restatement in order to prove revenue inflation. *See Aldridge v. A.T. Cross Corp.*, 284 F.3d 72 (1st Cir. 2002). The case ultimately settled for $1.5 million. (C.A. No. 00-203 ML (D.R.I.)).

- ***Silver v. UICI:***  The firm, as co-lead counsel, obtained a settlement resulting in a fund of $16 million for the class. (No. 3:99-cv-2860-L (N.D. Tex.)).

- ***In re Alcatel Alsthom Securities Litigation:***  The firm, as co-lead counsel, obtained a class settlement for investors of $75 million cash. (MDL Docket No. 1263 (PNB) (E.D. Tex.)).

- ***Walco Investments, Inc. et al. v. Kenneth Thenen, et al. (Premium Sales):***  The firm, as a member of the plaintiffs' steering committee, obtained settlements of $141 million for investors victimized by a Ponzi scheme. Reported at: 881 F. Supp. 1576 (S.D. Fla. 1995); 168 F.R.D. 315 (S.D. Fla. 1996); 947 F. Supp. 491 (S.D. Fla. 1996)).

- ***In re The Drexel Burnham Lambert Group, Inc.:***  The firm was appointed co-counsel for a mandatory non-opt-out class consisting of all claimants who had filed billions of dollars in securities litigation-related proofs of claim against The Drexel Burnham Lambert Group, Inc. and/or its subsidiaries. Settlements in excess of $2.0 billion were approved in August 1991 and became effective upon consummation of Drexel's Plan of Reorganization on April 30, 1992. (No. 90-cv-6954 (MP), Chapter 11, Case No. 90 B 10421 (FGC), Jointly Administered, reported at, *inter alia*, 960 F.2d 285 (2d Cir. 1992), *cert. dismissed*, 506 U.S. 1088 (1993) ("Drexel I") and 995 F.2d 1138 (2d Cir. 1993) ("Drexel II")).

- ***In re Michael Milken and Associates Securities Litigation:***  As court-appointed liaison counsel, the firm was one of four lead counsel who structured the $1.3 billion "global" settlement of all claims pending against Michael R. Milken, over 200 present and former officers and directors of Drexel Burnham Lambert, and more than 350 Drexel/Milken-related entities. (MDL Dkt. No. 924, M21-62-MP (S.D.N.Y.)).

- ***RJR Nabisco Securities Litigation:***  The firm represented individuals who sold RJR Nabisco securities prior to the announcement of a corporate change of control. This securities case settled for $72 million. (No. 88-cv-7905 MBM (S.D.N.Y.)).

- ***Qwest Securities Action:***  The firm represented New Jersey in an opt-out case against Qwest and certain officers, which was settled for $45 million. (C.A. No. L-3838-02 (Superior Court New Jersey, Law Division)).

## Whistleblower, Qui Tam, and False Claims Act

Berger & Montague has represented whistleblowers in matters involving healthcare fraud, defense contracting fraud, IRS fraud, securities fraud, and commodities fraud, helping to return more than $1.1 billion to federal and state governments. In return, whistleblower clients retaining Berger & Montague to represent them in state and federal courts have received more than $100 million in rewards. Berger & Montague's time-tested approach in Whistleblower/Qui Tam representation involves cultivating close, productive attorney-client relationships with the maximum degree of confidentiality for our clients.

## Judicial Praise for Berger & Montague Attorneys

Berger & Montague's record of successful prosecution of class actions and other complex litigation has been recognized and commended by judges and arbitrators across the country. Some remarks on the skill, efficiency, and expertise of the firm's attorneys are excerpted below.

### Antitrust

From **Judge Madeline Cox Arleo** of the U.S. District Court for the District of New Jersey praising the efforts of all counsel:

> I just want to thank you for an outstanding presentation. I don't say that lightly . . . it's not lost on me at all when lawyers come very, very prepared. And really, your clients should be very proud to have such fine lawyering. I don't see lawyering like this every day in the federal courts, and I am very grateful. And I appreciate the time and the effort you put in, not only to the merits, but the respect you've shown for each other, the respect you've shown for the Court, the staff, and the time constraints. And as I tell my law clerks all the time, good lawyers don't fight, good lawyers advocate. And I really appreciate that more than I can express.

Transcript of the September 9 to 11, 2015 Daubert Hearing in Castro v. Sanofi Pasteur, No. 11-cv-07178 (D.N.J.) at 658:14-659:4.

From **Judge William H. Pauley, III**, of the U.S. District Court of the Southern District of New York:

> "Class Counsel did their work on their own with enormous attention to detail and unflagging devotion to the cause. Many of the issues in this litigation . . . were unique and issues of first impression."

* * *

> "Class Counsel provided extraordinarily high-quality representation. This case raised a number of unique and complex legal issues …. The law firms of Berger & Montague and Coughlin Stoia were indefatigable. They represented the Class with a high degree of professionalism, and vigorously litigated every issue against some of the ablest lawyers in the antitrust defense bar."

*In re Currency Conversion Fee Antitrust Litigation*, 263 F.R.D. 110, 129 (2009).

From **Judge Faith S. Hochberg** of the United States District court for the District of New Jersey:

> "[W]e sitting here don't always get to see such fine lawyering, and it's really wonderful for me both to have tough issues and smart lawyers … I want to congratulate all of you for the really hard work you put into this, the way you presented the issues, … On behalf of the entire federal judiciary I want to thank you for the kind of lawyering we wish everybody would do."

*In re Remeron Antitrust Litig.*, Civ. No. 02-2007 (Nov. 2, 2005).

From U.S. District **Judge Jan DuBois**, of the U.S. District Court of the Eastern District of Pennsylvania:

> "[T]he size of the settlements in absolute terms and expressed as a percentage of total damages evidence a high level of skill by petitioners … the Court has repeatedly stated that the lawyering in the case at every stage was superb, and does so again."

*In Re Linerboard Antitrust Litig*., 2004 WL 1221350, at *5-*6 (E.D. Pa. 2004).

From **Judge Nancy G. Edmunds**, of the U.S. District Court of the Eastern District of Michigan:

> "[T]his represents an excellent settlement for the Class and reflects the outstanding effort on the part of highly experienced, skilled, and hard working Class Counsel….[T]heir efforts were not only successful, but were highly organized and efficient in addressing numerous complex issues raised in this litigation[.]"

*In re Cardizem CD Antitrust Litig*., MDL No. 1278 (E.D. Mich., Nov. 26, 2002).

From **Judge Charles P. Kocoras** of the U.S. District Court for the Northern District of Illinois:

> "The stakes were high here, with the result that most matters of consequence were contested.  There were numerous trips to the courthouse, and the path to the trial court and the Court of Appeals frequently traveled. The efforts of counsel for the class has [sic] produced a substantial recovery, and it is represented that the cash settlement alone is the second largest in the history of class action litigation. . . . There is no question that the results achieved by class counsel were extraordinary[.]"

Regarding the work of Berger & Montague in achieving more than $700 million in settlements with some of the defendants in *In Re Brand Name Prescription Drugs Antitrust Litigation*, 2000 U.S. Dist. LEXIS 1734, at *3-*6 (N.D. Ill. Feb. 9, 2000).

From **Judge Peter J. Messitte** of the U.S. District Court for the District of Maryland:

> "The experience and ability of the attorneys I have mentioned earlier, in my view in reviewing the documents, which I have no reason to doubt, the plaintiffs' counsel are at the top of the profession in this regard and certainly have used their expertise to craft an extremely favorable settlement for their clients, and to that extent they deserve to be rewarded."

Settlement Approval Hearing, Oct. 28, 1994, in *Spawd, Inc. and General Generics v. Bolar Pharmaceutical Co., Inc*., CA No. PJM-92-3624 (D. Md.).

From **Judge Donald W. Van Artsdalen** of the U.S. District Court for the Eastern District of Pennsylvania:

> "As to the quality of the work performed, although that would normally be reflected in the not immodest hourly rates of all attorneys, for which one would expect to obtain excellent quality work at all times, the results of the settlements speak for themselves. Despite the extreme uncertainties of trial, plaintiffs' counsel were able to negotiate a cash settlement of a not insubstantial sum, and in addition, by way of equitable relief, substantial concessions by the defendants which, subject to various condition, will afford the right, at least, to lessee-dealers to obtain gasoline supply product from major oil companies and suppliers other than from

19

their respective lessors. The additional benefits obtained for the classes by way of equitable relief would, in and of itself, justify some upward adjustment of the lodestar figure."

*Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27, 31 (E.D. Pa. 1985).

From **Judge Krupansky**, who had been elevated to the Sixth Circuit Court of Appeals:

> Finally, the court unhesitatingly concludes that the quality of the representation rendered by counsel was uniformly high.  The attorneys involved in this litigation are extremely experienced and skilled in their prosecution of antitrust litigation and other complex actions.  Their services have been rendered in an efficient and expeditious manner, but have nevertheless been productive of highly favorable result.

*In re Art Materials Antitrust Litigation*, 1984 CCH Trade Cases ¶65,815 (N.D. Ohio 1983).

From **Judge Joseph Blumenfeld** of the U.S. District Court for the District of Connecticut:

> "The work of the Berger firm showed a high degree of efficiency and imagination, particularly in the maintenance and management of the national class actions."

*In re Master Key Antitrust Litigation*, 1977 U.S. Dist. LEXIS 12948, at *35 (Nov. 4, 1977).

## Securities Litigation

From **Judge Jed Rakoff** of the U.S. District Court for the Southern District of New York:

> Court stated that lead counsel had made "very full and well-crafted" and "excellent submissions"; that there was a "very fine job done by plaintiffs' counsel in this case"; and that this was "surely a very good result under all the facts and circumstances."

*In re Merrill Lynch & Co., Inc. Securities, Derivative & ERISA Litigation*, Master File No. 07-cv-9633(JSR)(DFE) (S.D.N.Y., July 27, 2009).

From **Judge Michael M. Baylson** of the U.S. District Court for the Eastern District of Pennsylvania:

> "The Court is aware of and attests to the skill and efficiency of class counsel: they have been diligent in every respect, and their briefs and arguments before the Court were of the highest quality. The firm of Berger & Montague took the lead in the Court proceedings; its attorneys were well prepared, articulate and persuasive."

*In re CIGNA Corp. Sec. Litig.*, 2007 U.S. Dist. LEXIS 51089, at *17-*18 (E.D. Pa. July 13, 2007).

From **Chancellor William Chandler, III** of  the Delaware Chancery Court:

> "All I can tell you, from someone who has only been doing this for roughly 22 years, is that I have yet to see a more fiercely and intensely litigated case than this case.  Never in 22 years have I seen counsel going at it,

hammer and tong, like they have gone at it in this case. And I think that's a testimony – Mr. Valihura correctly says that's what they are supposed to do. I recognize that; that is their job, and they were doing it professionally."

*Ginsburg v. Philadelphia Stock Exchange, Inc.*, No. 2202 (Del. Ch., Oct. 22, 2007).

From **Judge Stewart Dalzell** of the U.S. District Court for the Eastern District of Pennsylvania:

"Thanks to the nimble class counsel, this sum, which once included securities worth $149.5 million is now all cash. Seizing on an opportunity Rite Aid presented, class counsel first renegotiated what had been stock consideration into Rite Aid Notes and then this year monetized those Notes. Thus, on February 11, 2003, Rite Aid redeemed those Notes from the class, which then received $145,754,922.00. The class also received $14,435,104 in interest on the Notes."

"Co-lead counsel ... here were extraordinarily deft and efficient in handling this most complex matter... they were at least eighteen months ahead of the United States Department of Justice in ferreting out the conduct that ultimately resulted in the write down of over $1.6 billion in previously reported Rite Aid earnings. In short, it would be hard to equal the skill class counsel demonstrated here."

*In re Rite Aid Corp. Securities Litigation*, 269 F. Supp. 2d 603, 605, n.1, 611 (E.D. Pa. 2003).

From **Judge Helen J. Frye**, United States District Judge for the U.S. District Court for the District of Oregon:

"In order to bring about this result [partial settlements then totaling $54.25 million], Class Counsel were required to devote an unusual amount of time and effort over more than eight years of intense legal litigation which included a four-month long jury trial and full briefing and argument of an appeal before the Ninth Circuit Court of Appeals, and which produced one of the most voluminous case files in the history of this District."

* * *

"Throughout the course of their representation, the attorneys at Berger & Montague and Stoll, Stoll, Berne, Lokting & Shlachter who have worked on this case have exhibited an unusual degree of skill and diligence, and have had to contend with opposing counsel who also displayed unusual skill and diligence."

*In Re Melridge, Inc. Securities Litigation*, No. CV 87-1426-FR (D. Ore. April 15, 1996).

From **Judge Marvin Katz** of the U.S. District Court for the Eastern District of Pennsylvania:

"[T]he co-lead attorneys have extensive experience in large class actions, experience that has enabled this case to proceed efficiently and professionally even under short deadlines and the pressure of handling thousands of documents in a large multi-district action... These counsel have also acted vigorously in their clients' interests...."

* * *

> "The management of the case was also of extremely high quality.... [C]lass counsel is of high caliber and has extensive experience in similar class action litigation.... The submissions were of consistently high quality, and class counsel has been notably diligent in preparing filings in a timely manner even when under tight deadlines."

Commenting on class counsel, where the firm served as both co-lead and liaison counsel in ***In re Ikon Office Solutions, Inc. Securities Litigation***, 194 F.R.D. 166, 177, 195 (E.D. Pa. 2000).

From **Judge William K. Thomas,** Senior District Judge for the United States District Court for the Northern District of Ohio:

> "In the proceedings it has presided over, this court has become directly familiar with the specialized, highly competent, and effective quality of the legal services performed by Merrill G. Davidoff, Esq. and Martin I. Twersky, Esq. of Berger & Montague...."

> \* \* \*

> "Examination of the experience-studded biographies of the attorneys primarily involved in this litigation and review of their pioneering prosecution of many class actions in antitrust, securities, toxic tort matters and some defense representation in antitrust and other litigation, this court has no difficulty in approving and adopting the hourly rates fixed by Judge Aldrich."

Commenting in ***In re Revco Securities Litigation***, Case No. 1:89CV0593, Order (N.D. Oh. September 14, 1993).

## Civil/Human Rights Cases

From **Deputy Treasury Secretary Stuart E. Eizenstat**:

> "We must be frank. It was the American lawyers, through the lawsuits they brought in U.S. courts, who placed the long-forgotten wrongs by German companies during the Nazi era on the international agenda. It was their research and their work which highlighted these old injustices and forced us to confront them. Without question, we would not be here without them.... For this dedication and commitment to the victims, we should always be grateful to these lawyers."

In his remarks at the July 17, 2000, signing ceremony for the international agreements which established the German Foundation to act as a funding vehicle for the payment of claims to Holocaust survivors.

## Insurance Litigation

From **Judge Janet C. Hall**, of the U.S. District Court of the District of Connecticut:

> Noting the "very significant risk in pursuing this action" given its uniqueness in that "there was no prior investigation to rely on in establishing the facts or a legal basis for the case....[and] no other prior or even now similar case involving parties like these plaintiffs and a party like these defendants." Further, "the quality of the representation provided to the plaintiffs ... in this case has been consistently excellent.... [T]he defendant[s] ... mounted throughout the course of the five years the case pended, an extremely vigorous defense.... [B]ut for counsel's outstanding work in this case and substantial effort over five years, no member

22

> of the class would have recovered a penny…. [I]t was an extremely complex and substantial class ... case ... [with an] outstanding result."

Regarding the work of Berger & Montague attorneys Peter R. Kahana and Steven L. Bloch, among other co-class counsel, in *Spencer, et al. v. The Hartford Financial Services Group, Inc., et al.,* in the Order approving the $72.5 million final settlement of this action, dated September 21, 2010 (No. 3:05-cv-1681, D. Conn.).

## Customer/Broker Arbitrations

From **Robert E. Conner**, Public Arbitrator with the National Association of Securities Dealers, Inc.:

> "[H]aving participated over the last 17 years in 400 arbitrations and trials in various settings, ... the professionalism and the detail and generally the civility of everyone involved has been not just a cause for commentary at the end of these proceedings but between ourselves [the arbitration panel] during the course of them, and ... the detail and the intellectual rigor that went into the documents was fully reflective of the effort that was made in general.  I wanted to make that known to everyone and to express my particular respect and admiration."

About the efforts of Berger & Montague shareholders Merrill G. Davidoff and Eric L. Cramer, who achieved a $1.1 million award for their client, in ***Steinman v. LMP Hedge Fund, et al.***, NASD Case No. 98-04152, at Closing Argument, June 13, 2000.

## Other

From **Stephen M. Feiler, Ph.D.,** Director of Judicial Education, Supreme Court of Pennsylvania, Administrative Office of Pennsylvania Courts, Mechanicsburg, PA *on behalf of the Common Pleas Court Judges (trial judges) of Pennsylvania*:

> "On behalf of the Supreme Court of Pennsylvania and AOPC's Judicial Education Department, thank you for your extraordinary commitment to the *Dealing with Complexities in Civil Litigation* symposia.  We appreciate the considerable time you spent preparing and delivering this important course across the state.  It is no surprise to me that the judges rated this among the best programs they have attended in recent years."

About the efforts of Berger & Montague attorneys Merrill G. Davidoff, Peter Nordberg and David F. Sorensen in planning and presenting a CLE Program to trial judges in the Commonwealth of Pennsylvania.

## *BIOGRAPHIES OF THE BERGER & MONTAGUE ATTORNEYS INVOLVED IN THE CLEVELAND INTEGRITY SERVICES OVERTIME LITIGATION*

### Shanon J. Carson

Shanon J. Carson is a Managing Shareholder of the Firm. He Co-Chairs the Firm's Employment Law and Consumer Protection Departments, and is a member of the Firm's Commercial Litigation, Environmental & Mass Tort, Employee Benefits/ERISA, Insurance & Financial Products & Services, and Lending Practices and Borrowers' Rights Departments.

Mr. Carson has achieved the highest peer-review rating, "AV," in Martindale-Hubbell, and has received honors and awards from numerous publications. In 2009, Mr. Carson was selected as one of 30 "Lawyers on the Fast Track" in Pennsylvania under the age of 40. In both 2015 and 2016, Mr. Carson was selected as one of the top 100 lawyers in Pennsylvania, as reported by Thomson Reuters.

Mr. Carson is often retained to represent plaintiffs in employment cases, wage and hour cases for minimum wage violations and unpaid overtime, ERISA cases, consumer cases, insurance cases, construction cases, automobile defect cases, defective drug and medical device cases, product liability cases, breach of contract cases, invasion of privacy cases, false advertising cases, excessive fee cases, and cases involving the violation of state and federal statutes. Mr. Carson represents plaintiffs in all types of litigation including class actions, collective actions, multiple plaintiff litigation, and single plaintiff litigation. Mr. Carson is regularly appointed by federal courts to serve as lead counsel and on executive committees in class actions and mass torts.

Mr. Carson is frequently asked to speak at continuing legal education seminars and other engagements, and is active in nonprofit and professional organizations. Mr. Carson currently serves on the Board of Directors of the Philadelphia Trial Lawyers Association (PTLA), and as a Co-Chair of the PTLA Class Action/Mass Tort Committee. Mr. Carson is also a member of the American Association for Justice, the American Bar Foundation, Litigation Counsel of America, the National Trial Lawyers – Top 100, and the Pennsylvania Association for Justice.

While attending the Dickinson School of Law of the Pennsylvania State University, Mr. Carson was senior editor of the Dickinson Law Review and clerked for a U.S. District Court Judge. Mr. Carson currently serves on the Board of Trustees of the Dickinson School of Law of the Pennsylvania State University.

24

## Sarah R. Schalman-Bergen

Sarah R. Schalman-Bergen is a Shareholder at Berger & Montague and Co-Chairs the Employment Law practice group. She also practices in the antitrust practice groups. Her practice focuses on class and collective action employment litigation, and antitrust cases involving wage suppression of workers.

Ms. Schalman-Bergen's practice focuses on wage and hour class and collective actions as well as class action discrimination lawsuits under state and federal law. Specifically, Ms. Schalman-Bergen has worked on all aspects of wage and hour overtime lawsuits throughout the country, representing employees whose employers do not pay them properly in different industries, including at meat and poultry plants, at fast food restaurants, in white collar jobs and in the government. For example, currently, Ms. Schalman-Bergen is representing employees who work for oil and gas companies in various wage and hour class actions across the country.

In the Antitrust practice group, Ms. Schalman-Bergen has had an active role in prosecuting complex cases, including multidistrict litigation. Specifically, Ms. Schalman-Bergen has worked on cases involving anticompetitive practices in the pharmaceutical industry, in the online rental entertainment market. Ms. Schalman-Bergen also represented the employees of several high tech companies who alleged that the companies entered into "do not poach" agreements that illegally suppressed employees' wages.

Ms. Schalman-Bergen also maintains an active pro bono practice. She serves as volunteer of counsel to the AIDS Law Project of Pennsylvania. Through her role there, Ms. Schalman-Bergen litigates HIV discrimination cases, as well as other cases impacting the rights of people living with HIV/AIDS.

Prior to joining Berger & Montague, Ms. Schalman-Bergen practiced in the litigation department at a large Philadelphia firm where she represented clients in a variety of industries in complex commercial litigation. During law school, Ms. Schalman-Bergen served as an executive editor for the Harvard Civil Rights-Civil Liberties Law Review.

Ms. Schalman-Bergen is a graduate of Harvard Law School (J.D. *cum laude*, 2007), where she served as an executive editor of the *Harvard Civil Rights-Civil Liberties Law Review*. She is also a graduate of Tufts University (B.A. *summa cum laude*, 2001). During law school, Ms. Schalman-Bergen served as an executive editor for the *Harvard Civil Rights-Civil Liberties Law Review*. She is admitted to practice law in Pennsylvania.

## Alexandra K. Piazza

Alexandra Koropey Piazza is an associate at Berger & Montague, where she is a member of the firm's Employment Law, Consumer Protection and Lending Practices & Borrowers' Rights practice groups. In the Employment Law practice group, Ms. Piazza primarily focuses on wage and hour class and collective

actions arising under state and federal law.  Ms. Piazza's work in the Consumer Protection and Lending Practices & Borrowers' Rights practice groups involves consumer class actions concerning financial practices.

Ms. Piazza is a graduate of the University of Pennsylvania and Villanova University School of Law.  During law school, Ms. Piazza served as a managing editor of the Villanova Sports and Entertainment Law Journal and as president of the Labor and Employment Law Society.  Ms. Piazza also interned at the United States Attorney's Office and served as a summer law clerk for the Honorable Eduardo C. Robreno of the United States District Court for the Eastern District of Pennsylvania.

### Camille Fundora

Ms. Fundora is an Associate in the Firm's Employment Law, Consumer Protection, and Lending Practices & Borrowers' Rights practice groups. Ms. Fundora primarily focuses on wage and hour class and collective actions arising under the Fair Labor Standards Act and state laws.

Prior to joining Berger & Montague, Ms. Fundora practiced in the litigation department at a boutique Philadelphia law firm where she represented clients in a variety of personal injury, disability, and employment discrimination matters. Ms. Fundora is a graduate of Widener University School of Law.

Ms. Fundora is an active member of the Pennsylvania, Philadelphia and Hispanic Bar Associations.

26